William G. MINIER, Plaintiff,

v.

The TRAVELERS INDEMNITY COMPANY, a Foreign Corporation, Defendant.

Civ. A. No. P–1960.

United States District Court
S. D. Illinois, N. D.

Jan. 22, 1958.

Frederick W. Allen, Peoria, Ill., Peterson & Johnson, Princeton, Ill., for plaintiff.

Henry Kneller, Peoria, Ill., Robert E. Hunt, Peoria, Ill., for defendant.

MERCER, District Judge.

This is a suit by the plaintiff, William G. Minier, to recover certain benefits under an insurance policy issued by the defendant, The Travelers Indemnity Company, a foreign corporation. The policy is a standard form captioned "Workmen's Compensation and Employers' Liability Policy" with a rider or endorsement attached thereto, entitled,— "Voluntary Compensation Endorsement." The Workmen's Compensation features of the policy are set forth as Coverage A; the Employers' Liability features as Coverage B; and the Voluntary Compensation features as Coverage C.

The plaintiff was on January 29, 1955 the duly elected, acting and qualified Road Commissioner for Milo Township, Bureau County, Illinois. On that day plaintiff suffered injuries arising out of and in the course of his duties as such Road Commissioner. Plaintiff filed a petition before the Industrial Commission of the State of Illinois for an award under the Workmen's Compensation laws of the State of Illinois, Ill.Rev.Stat.1957, c. 48, § 138.1 et seq. It was determined by the Industrial Commission of the State of Illinois that this was not a Workmen's Compensation policy, subject to administration by the Industrial Commission and that the plaintiff was not an employee entitled to Workmen's Compensation, denied compensation and found that the petitioner, William G. Minier, was the duly elected, qualified and acting Township Commissioner of Milo Township, Bureau County, Illinois. After the determination by the Industrial Commis-

sion plaintiff made claim to the defendant company under the provisions of the policy, which claim was denied. This suit followed.

The defendant company has filed a motion to dismiss the complaint on the grounds, first, that under the insurance contract, plaintiff, William G. Minier is not an insured and inasmuch as there is no privity of contract between him and the company, may not maintain this suit against the company. It is further pleaded that Milo Township is the insured in the contract and the only proper party which could be named a defendant to the plaintiff's suit. The second contention of defendant raised under the motion to dismiss is that under the contract and the law of Illinois, the company is liable only to indemnify Milo Township for any judgments taken against it as a result of the employment and coverages embraced in the policy, thus making the company not liable to the plaintiff and that said defendant company is not a proper party until such time as plaintiff first obtains a judgment against Milo Township. As to the first contention of the defendant, the plaintiff asserts that Item One of Declarations in the policy expressly states the name of the insured to be "Milo Township—William Minier, Road Commissioner" and that the plain purport of this Declaration is that William Minier, the plaintiff, is an insured. Item One of the policy creates an uncertainty as to whether William Minier was intended to be the insured. Numerous decisions, both in the Federal Courts and the State Courts of Illinois, hold that the principles applicable to construction of insurance policies do not differ from those governing other contracts. While it is universally recognized that an insurer is liable to pay only in accordance with its promises, it is held that the rules of law applicable to insurance contracts should be based upon just and equitable principles to the end that the protection anticipated will not be defeated by fine distinctions or technical language. The insurer draws the contract and the average insured is not versed in the subject matter and for this reason it is held that ambiguous and equivocal provisions in the insurance contract whereby the insurer seeks to limit or avoid its liability are to be construed most favorably for the insured and against the insurer. If language is reasonably open to two constructions, that more favorably to the insured will be adopted. It is the opinion of the Court that William Minier was an insured. The purport of the entire contract is to protect William Minier for benefits which otherwise would have been paid under Workmen's Compensation. A construction of the language in Item One established a fact that there was more than one insured and that William Minier was one of them. It appears to the Court that the defendant company represented by its policy that William Minier was an insured and now seeks to use the ambiguity it created not to limit its liability but to avoid it altogether and thus to defeat the very purpose for which the insurance contract was entered into. Under such circumstances the policy should be construed most favorable for the plaintiff and against the defendant.

Answering the second contention of the defendant that a judgment against Milo Township is a condition precedent to defendant's liability, it is necessary to consider the provisions of Coverage C upon which the plaintiff's action is based. Coverage C, among other things, provides as follows: "To pay on behalf of the insured if any employee within a group of employees hereinafter described, shall sustain injury, an amount equal to the compensation and other benefits which would have been payable under the Workmen's Compensation law, had the injured employee and the insured been subject to such law with respect to such employment." Paragraph 4 of Coverage C, provides as follows: "The benefits payable under Coverage C on account of such injury shall be paid to

such person or persons as would have been entitled thereto under the designated Workmen's Compensation law." The policy contains no express condition relating to Coverage C which states that no action shall lie against the company until a judgment is obtained against the insured or does it contain an express condition that the company shall be directly and primarily liable to persons entitled to benefits under Coverage C. The Company seeks to read Condition Nine into Coverage C, this condition being as follows:—"No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until the amount of the insured's obligation to pay shall have been fully determined either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant, and the Company." In construing Condition Nine it should be noted that this condition is made applicable only to Coverage B.

Paragraph Five of Coverage C provides that any person entitled to payment under Coverage C, shall refuse to accept such payment and to comply with the terms and conditions set forth above or if any person shall commence any proceedings at law, in equity, or in admiralty, except for such payment seeking damages from the insured or the Company on account of such injury, the Company's liability under Coverage C with respect to such injury shall thereupon terminate. The language of Paragraphs Four and Five of Coverage C clearly indicates that the parties to the contract had no intention to limit the company's liability to judgments against the insured but that the intent was that the company should deal with and make payments directly to the injured person. This conclusion is substantiated by further language in Paragraph Four which provides that the injured person shall execute a release of all claims against the insured and the company and shall assign to the Company all rights of action it may have

against third persons liable on account of the injury. This language is incompatible with any theory that the Company did not agree to direct liability to the injured person or that its only liability was for judgments obtained against the insured.

Coverage C is not a voluntary liability agreement but a voluntary compensation agreement. The full purport of the endorsement as well as the purpose for which the contract was entered into is to insure that injured employees in the group will receive compensation equal to that they would have received if both Milo Township and its employees had been subject to the Workmen's Compensation law. Since the Company made no express condition in the policy, the reasonable construction would be that compensation equivalence promised under Coverage C would stand on the same basis as compensation promised under Coverage A, and that the Company, as indicated in Condition Seven, is directly and primarily liable to any person entitled to benefits based on the Workmen's Compensation law.

Several reasons seem to justify the conclusions I have reached in construing Coverage C attached to the policy. The attachment of this rider to the policy must have been for the purpose of giving a liability other than that fixed in the policy; the language of the rider imposes a liability upon the insurer larger than that stated in the original policy and the inclusion of the name "Minier" and the description "Road Commissioner" lends a support to the conclusion that Workmen's Compensation Liability, regardless of the applicability of the Illinois Workmen's Compensation law, was intended. The rider was attached for the purpose of modifying the contract either by increasing or decreasing the liability or the amount of liability; Otherwise, there would have been no reason for its attachment. It appears to me that both Milo Township and the Company knew or should have known that Mr. Minier, being an elected public official of Milo

Township, could, in no event, recover as an employee of Milo Township, under the Illinois Workmen's Compensation Act. It would have been equally reasonable to assume that it was the intention of the parties that he should be protected in the same manner he would have been had he been an employee and that the very obvious purpose of the rider was to afford such protection. The rider deals with the liability which arises out of accidents to which the Illinois Workmen's Compensation law did not, because of the status of Mr. Minier, apply. Coverage C contains a simple unqualified promise by the insurer "to pay an amount equal to the compensation and other benefits which would have been payable under the Workmen's Compensation law had the injured employee and the insured been subject to such law with respect to such employment." If this promise did not include persons not covered by the Compensation law, why attach the rider! The policy, before the rider was attached, covered liability to employees who were within the protection of the Compensation law; then to what persons did the rider refer when it spoke of "payment under the Workmen's Compensation law had the injured employee and the insured been subject to such law with respect to such employment." What language could have more definitely included Minier, particularly in view of the fact that Minier was named as an insured and by reason of the fact that he was the only person falling within the description of "Road Commissioner."

It might be unnecessary to invoke a rule of construction which creates an inclusion of liability where doubtful or ambiguous language is used in contracts of this character but if necessary this rule might well be invoked in this case. It appears to this Court that the language of the contract including the language of Coverage C, clearly suggests an intention to cover Mr. Minier.

It is therefore ordered that the motion to dismiss the complaint be and the same is hereby denied.